IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| PHILLIP A. TALLEY, | } | |
| | } | |
| Appellant, | } | |
| | } | CIVIL ACTION NO. |
| v. | } | 06-AR-4819-S |
| | } | |
| ALABAMA DEPARTMENT OF PUBLIC | } | BK Case #05-4442 |
| SAFETY and W.M. COPPAGE, IN | } | |
| HIS OFFICIAL CAPACITY | } | |
| | } | |
| Appellees. | | |

**MEMORANDUM OPINION**

On July 27, 2006, the Bankruptcy Court of the Northern District of Alabama (the "Bankruptcy Court"), Hon. James J. Robinson, ordered the dismissal of an adversary proceeding brought by appellant, Phillip A. Talley ("Talley"), against appellees, the Alabama Department of Public Safety (the "DPS") and W.M. Coppage (collectively, the "appellees"). Talley now brings a timely appeal from that order.

The court's jurisdiction over this appeal is based on 28 U.S.C. §158(a)(1).

## I. Standard of Review

The Bankruptcy Court's findings of fact are subject to a clearly erroneous standard of review, while its conclusions of law are subject to *de novo* review. *In re Richard W. Paschen*, 296 F.3d 1203, 1205 (11th Cir. 2002).

## II. Procedural History

1

On January 24, 2006, Talley, who was and is the debtor in a Chapter 13 proceeding, brought an adversary proceeding, alleging that the suspension of his driver's license violated the automatic stay imposed by §362 of the Bankruptcy Code (the "Code").  The Bankruptcy Court concluded that the suspension was merely a continuation of a prior criminal proceeding under §362(b)(1) of the Code and was therefore exempted from the automatic stay. Accordingly, Talley's action was dismissed.  Talley's motion to alter was denied on September 9, 2006.

### III.  Facts

Talley has a poor driving record.  He has numerous traffic convictions and has regularly failed to pay the fines levied against him.  On October 14, 2005, Talley filed a petition for relief under Chapter 13 of the Code.  The **only** debts listed on his petition were eight unpaid fines for traffic violations, totaling $3,280.50.  Talley's Chapter 13 plan proposed to pay 100% of the fines and fees over a 60 month period.  The plan was confirmed on December 19, 2005.

On November 2, 2005, before the proposed plan had been confirmed, the St. Clair County District Court ordered the suspension of Talley's driver's license.  Although this suspension occurred after Talley filed his petition, the state court's action was in response to his continuing failure to pay his criminal

2

fines.    A  copy  of  the  order  was  forwarded  to  the  DPS,  which
suspended  Talley's  license,  effective  November  7,  2005.

## IV. Analysis

§362(b)(1)  creates  an  exception  to  the  usual  protections
afforded  to  a  debtor  who  petitions  for  relief  under  the  Code.
Normally,  the  automatic  stay  created  by  §362(a)  prevents  creditors
from  recovering  against  a  post-petition  debtor  outside  of  a
repayment  plan  sanctioned  by  the  bankruptcy  court.    However,
§362(b)(1)  provides:  "[t]he  filing  of  a  petition  .  .  .  does  not
operate  as  a  stay  under  subsection  (a)  of  this  section,  of  the
commencement  or  continuation  of  a  criminal  action  or  proceeding
against  a  debtor  .  .  .  ."    11  U.S.C.  §362(b)(1).

The  purpose  of  this  provision  is  to  ensure  that  the  Code  does
not  shield  those  who  would  avoid  a  fine  or  punishment  properly
imposed  by  a  court  of  law.    In  other  words,  "[t]he  bankruptcy  laws
are  not  a  haven  for  criminal  offenders,  but  are  designed  to  give
relief  from  financial  overextension."    H.R.  No.  95-595  at  342,  95th
Cong.,  1st  Sess.  (1977).    §362(b)(1)  is  also  indicative  of  the
general  policy  that  federal  courts  should  abstain  from  interfering
in  state  criminal  proceedings.    The  Supreme  Court  has  stated  that
the  language  of  the  Code  must  be  considered  "in  light  of  the
interests  of  the  States  in  unfettered  administration  of  their
criminal  justice  systems."    *Kelly v. Robinson*,  479  U.S.  36,  44,  107

3

S.Ct. 353, 358 (1986). *See also In re Sims*, 101 B.R. 52, 53 (W.D. Wis. 1989).

The Bankruptcy Court rightly concluded that the suspension of Talley's license was a "continuation of a criminal action or proceeding" and was therefore not prohibited by the automatic stay. Mem. Op. at 3. This court is in full agreement with that conclusion, which, arguably was a mixed question of fact and law. To the extent it was a factual question, the Bankruptcy Court's answer was not clearly erroneous. To the extent it was a legal question, the Bankruptcy Court was correct. Both a plain reading of the statute and a review of the relevant case law indicate that the suspension of Talley's license is precisely the type of conduct §362(b)(1) excludes from bankruptcy protection.

Talley argues that the purpose of the Code will be thwarted unless a debtor facing criminal fines is granted the protection of the automatic stay. According to Talley, the "'adjustment of debts' of an individual" is the foundation of the Chapter 13 proceeding. Because an unpaid criminal fine should be characterized as a debt, the argument runs, it should be treated by the Code as the equivalent of other, non-punitive debts. In the abstract, Talley's argument is not so far-fetched. Indeed, the Supreme Court seemed to recognize as much in *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 110 S.Ct. 2126 (1990), a case heavily relied upon by Talley. In that case, the Court held

4

that a restitution obligation imposed as a condition of probation in a state court criminal proceeding constituted a "debt" for purposed of bankruptcy protection. *Id.* at 560.  However, Talley is mistaken in thinking that the *Davenport* decision buttresses his position in this case for two reasons.  First, and most importantly, Congress statutorily superceded the relevant portion of the holding in *Davenport*, amending the Code to except restitution orders from discharge under Chapter 13.[1]  *See* Pub.L. 101-581, 104 Stat. 2856 (Nov. 15 1990) (adding 11 U.S.C. §1328(a)(3)).    Second, *Davenport* held that state-imposed restitution awards do not fall within the scope of the §362(b) exemption.  Where, as in this case, the issue is not one of restitution awards but rather of criminal sanctions, *Davenport*, even were it not statutorily superceded, is irrelevant.

Talley's second, and equally unsuccessful, argument is that the suspension of his license is merely an under-handed ploy to exact payment from him in contravention of the bankruptcy protection he now enjoys.  In support of his argument, Talley offers the following quote: "§362(b)(1) does not exempt from the stay a criminal proceeding whose **sole purpose** is to collect a debt."  *In Re Muncie*, 240 B.R. 725 (Bank. S.D. Ohio 1999)(emphasis

---

[1] Congress left in place the general holding in *Davenport* regarding the breadth of the definition of a "claim" under the Code.  *See Johnson v. Home State Bank*, 501 U.S. 78, 111 S.Ct. 2150 (1991).

added).  Appellant's Br. at 15.  What Talley understandably fails
to mention in his discussion of the case is that the criminal
"prosecution" at issue in *Muncie* was instigated by a private debtor
and was, in the court's view, merely "a guise for a collection
effort."  *Muncie*, 240 B.R. at 727.  Moreover, even were the court
to ignore the marked factual differences between *Muncie* and this
case, Talley's argument fails because there is no indication that
appellees's conduct was solely, or even partially, designed to
strong-arm Talley to pay his fines ahead of schedule.  To the
contrary, it seems that Talley's bankruptcy filing was more likely
a ploy to frustrate criminal sanctions.

Talley ultimately lost his license because he did not pay the
fines that were levied against him before he filed for Chapter 13
protection.  There is no question but that the fines are criminal
in nature; they were levied against Talley because of his
convictions for violating multiple traffic laws.  Nor is there any
indication that the appellees were attempting a type of  "end-run"
around the strictures of the Code, suspending Talley's license to
secure prompt payment of the outstanding fines.  Therefore, the
court easily concludes, as did the Bankruptcy Court, that the
action taken by appellees was a part of a prior criminal
proceeding.

Thus, the sole remaining question is whether the suspension of
Talley's license was a "commencement or continuation" of a criminal

proceeding for purposes of §362(b)(1).  The Bankruptcy Court answered in the affirmative, holding that the suspension was a continuation of multiple criminal proceedings against Talley. Therefore, that court held that the suspension of Talley's license was not prohibited by the automatic stay.  In its memorandum opinion, the Bankruptcy Court stated:

> [U]pon the Plaintiff's default on his monetary obligations (orignally ordered in lieu of incarceration), the District Court had two options: incarceration or revocation of the Plaintiff's driver's license. Certainly if the District Court could incarcerate the Plaintiff upon his default, and such incarceration would be a continuation of criminal proceedings, it could also revoke the [license] as a continuation of the criminal proceedings. Mem. Op. at 4

This statement accurately places the suspension into its proper context: this was not an independent action on the part of appellees, but rather the inevitable consequence of Talley's not paying criminal fines.  Therefore, for purposes of §362, the suspension constituted a continuation of a criminal action.

Other courts have reached the same, or a similar, conclusion. For example, multiple courts have held that incarcerating a debtor does not violate the automatic stay if the incarceration results from the failure to pay criminal fines or costs. *In re Perez*, 220 B.R. 216 (Bankr. D.N.J. 1998); *In the Matter of Cuevas*, 205 B.R. 457 (Bankr. D.N.J. 1997); *In the Matter of Sims*, 101 B.R. 52 (Bankr. W.D. Wis. 1989).  In this case, where the debtor is not faced with incarceration, Talley's position is even less compelling.

7

Finally, appellees argue that they were not properly joined as parties to the original adversarial proceeding brought by Talley. This position is based on appellees' ignorance of Talley's filing of his petition.  The proper party, they argue, is the St. Clair County District Court which actually ordered the suspension of Talley's license on November 3, 2003.  While appellees may, in fact, be correct on this procedural point, the argument is mooted by this court's conclusion that the dismissal of the adversary proceeding is due to be affirmed.

## V. Conclusion

For the foregoing reasons, the court finds that Talley's claim is without merit.  Therefore, the Bankruptcy Court's order dismissing Talley's action is AFFIRMED.

DONE this 29th day of January, 2007.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE